412

(658 P.2d 1059)
No. 54,031

MAXINE ROOK and JOHN ROOK, *Appellees*, v. JAMES E. RUSSELL PETROLEUM, INC., *Appellant*.

Opinion filed March 3, 1983.

*John R. Toland*, of Toland & Thompson, of Iola, for the appellant.

*Orville J. Cole*, of Cole & Doering, of Garnett, for the appellees.

Before SPENCER, P.J., PARKS, J., and HARRY G. MILLER, District Judge Retired, Assigned.

PARKS, J.: Plaintiffs Maxine and John Rook filed this action seeking partial cancellation of oil and gas leases held by defendant James E. Russell Petroleum, Inc. The trial court held that the leases were still in effect but that the defendant's 17-year suspension of production constituted abandonment of the oil and gas production rights. It further held that the reservation of the right to store gas on the property, held by the sublessee, Cities Service Gas Company, remained in effect. Defendant appeals.

James Russell purchased the leases in question in 1963 from W. S. Fees and subsequently sold them to defendant corporation in 1973. Fees, the original lessee, conveyed a sublease to Cities Service Gas Company for the storage of natural gas on the property and Russell's interest was identical to that held by Fees. The leases both contain clauses which extend the term of the interest beyond the primary term and so long as (1) oil or gas is produced on the property or (2) the gas storage rights are exercised or (3) the storage rentals are being paid. Crude oil was produced on the property for over 25 years first by primary production and then on one lease by waterflooding until defendant's predecessor suspended all production in 1965. Gas has been continuously stored on the property since the leases were executed.

At the time of trial, no production or active exploration had

been undertaken under the lease rights for seventeen years. Old equipment had been left on the property and allowed to rust and deteriorate until some of it had little more than salvage value. The pump house was torn down and removed in the early 1970's and defendant was not actually present on the land after that date. On the other hand, defendant produced a substantial amount of documentary evidence of the corporation's interest and plans for reinstating production on the leases. Defendant planned to use an expensive means of tertiary recovery on the land and every few years a study was carried out to determine the likely yield of such a project given the known information of the land's potential reserves and the technology available to undertake the task. Property tax was paid each year on the leases and the required semiannual reports were submitted to the Kansas Corporation Commission designating the wells as temporarily abandoned but unplugged and available for future use. Plaintiff never requested that defendant resume production or queried its plans for future development but defendant's own exhibits indicate that production could have been profitable as early as 1970. Finally, as soon as this suit was filed defendant expressed its willingness to begin immediate production.

The district court held that by virtue of the continuous storage of natural gas on the property, the leases were by their terms still in effect. However, the court concluded that defendant's 17-year lapse of production evidenced an intent to abandon the lease rights compelling forfeiture. Defendant appeals not only the court's finding of abandonment but the ruling that no notice or demand need be tendered by the lessor before a court may order forfeiture of a lease by abandonment.

Since the discovery of oil and gas in this state, our courts have sought to balance the interests of the landowner and oil producer by promoting development with all reasonable speed. Therefore, when a producer holds development rights under a lease but fails to exercise its rights for a significant period of time, a court may find the lease abandoned and all rights forfeited. See, e.g., *Rawlings v. Armel,* 70 Kan. 778, 79 Pac. 683 (1905). Since abandonment is the voluntary or intentional release of a known right, the intent to abandon must be proven; however, that intent may be inferred from the conduct of the owner and the nature and situation of the property. *Chapman v. Continental Oil Co.,*

149 Kan. 822, 824, 89 P.2d 833 (1939). More recently, courts have sought the same result by holding that when a lease does not contain express provisions creating duties in the lessee to drill exploratory wells; to drill additional wells after discovery; to operate with diligence and market the product if oil and gas are discovered in paying quantities, and to protect the premises against drainage by wells on adjoining leases, the law imposes such duties upon the lessee under the doctrine of implied covenants. *Renner v. Monsanto Chemical Co.,* 187 Kan. 158, 167, 354 P.2d 326 (1960). Thus, a forfeiture may also be ordered for the breach of one of these implied covenants. Moreover, the breach of an implied covenant may evidence the intent to abandon a leasehold. *Mills v. Hartz,* 77 Kan. 218, 223, 94 Pac. 142 (1908).

The issue of abandonment is one of fact. Therefore, our review is limited to determining whether there is substantial competent evidence supporting the court's conclusion that defendant abandoned the leasehold. Although we conclude that the evidence of defendant's extended failure to resume production supports the inference of an intent to abandon, this is true because covenants to continue to develop and explore the land are implied in the lease. See, *e.g., Rush v. King Oil Co.,* 220 Kan. 616, Syl. ¶¶ 1-3, 556 P.2d 431 (1976). The activity required by the lease has been supplied by defendant's sublessee and plaintiff does not seek to end these storage rights. This is not a case where the lessee has done nothing to develop the property or has drilled a few dry holes and given up. This property was in production for several decades and now must apparently be subjected to more sophisticated recovery processes to be put into profitable production. The evidence showed that this production could have reasonably begun in 1970. Therefore, defendant's failure to act with reasonable speed to further develop the land at a time when it was shown to be profitable evidences a long-term breach of the implied covenant of reasonable development. *Rush,* 220 Kan. at 619. The district court ruled as a matter of law that defendant committed a breach of implied covenant and it is the evidence of this breach which in turn establishes the intent to abandon. Thus, the basis for an order of forfeiture premised upon either abandonment or breach of an implied covenant is, in this case, the same.

Before a court will order forfeiture of an oil and gas lease on the grounds of a breach of implied covenant, the lessor is required to have demanded performance of the covenant by the lessee. *Cowman v. Phillips Petroleum Co.,* 142 Kan. 762, 51 P.2d 988 (1935); *Robinson v. Continental Oil Company,* 255 F. Supp. 61 (D. Kan. 1966). Some states have held the requirement of a demand inapplicable when a lease is cancelled by virtue of an abandonment because abandonment is presumably a voluntary act. *American Wholesale Corp. v. F & S Oil and Gas Co.,* 242 Ky. 356, 46 S.W.2d 498 (1932). Contra, *Kunc v. Harper-Turner Oil Company,* 297 P.2d 371, 377 (Okla. 1956); *Hanover Co. v. Hines,* 11 S.W.2d 621, 627 (Tex. Civ. App. 1928). See also 3 Summers, Oil and Gas § 469, pp. 372-73 (2d ed. 1958). However, when as here the evidence of a breach of an implied covenant is relied upon to infer the intent to abandon and the lease has been extensively developed in the past, we hold that the lessor should be required to give the lessee notice before a court will cancel the lease.

We conclude that since no demand for performance was made prior to suit, defendant should have been allowed time to evidence its good faith. Therefore, it is the order of the court that the oil and gas lease shall be deemed to be cancelled in the event defendant does not begin production efforts within 60 days from the date the mandate is filed in this case. The trial court is directed to retain jurisdiction of this case and to make such further orders as might be necessary consistent with this opinion. See, *e.g., Rush v. King Oil Co.,* 220 Kan. 616, Syl. ¶ 6.

Affirmed as modified.